IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>*v.*<br><br>URAYB WAHDAN and<br>SAID WAHDAN,<br><br>*Defendants.* | Civil No. 17-cv-1287<br><br><br>**COMPLAINT TO RECOVER<br>FINANCIAL PENALTY** |

Plaintiff, the United States of America, alleges as follows:

1.    This timely suit seeks to recover unpaid financial penalties imposed upon

Urayb Wahdan and Said Wahdan. The penalties were imposed pursuant to 31

U.S.C. § 5321(a)(5) because the Wahdans failed to timely file accurate Forms TD F

90-22.1, Report of Foreign Bank and Financial Accounts ("FBAR"), for the years

2008, 2009, and 2010.

2.    Generally speaking, every U.S. person who has a financial interest in, or

signature or other authority over, at least one foreign account must file an FBAR.

The FBAR does not have to be filed if the aggregate balance in all foreign accounts

is less than $10,000.

3.    On an FBAR, the filer must list certain information for each foreign

account. That information includes the financial institution at which the account is

held, the account number, and the maximum balance in the account during the calendar year.

### Authorization for Suit, Jurisdiction, and Venue

4.     The United States brings this suit to recover FBAR penalties pursuant to 31 U.S.C. § 5321(b). Pursuant to 31 U.S.C. § 3711(g)(4)(C), this action was filed with the authorization of, and at the request of, the Secretary of the Treasury, acting through his delegate, the Associate Area Counsel of the Internal Revenue Service. The United States' Complaint is filed at the direction of a delegate of the Attorney General of the United States.

5.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1345 and 28 U.S.C. § 1355(a).

6.     Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(c)(1) and 28 U.S.C. § 1395(a).

### The Defendants

7.     Urayb Wahdan is a U.S. citizen who resides in this judicial district.

8.     Said Wahdan is a U.S. citizen who resides in this judicial district.

9.     Said Wahdan and Urayb Wahdan are married.

10.     Together, the Wahdans own a majority stake in Jerusalem Restaurant in Denver, Colorado, and University Hills Market and Deli in Boulder, Colorado.

### The Wahdans' UBS Accounts

11.   On or about December 16, 1999, the Wahdans opened a bank account with UBS AG. The account was located in Geneva, Switzerland. The account number ended with the digits 547 ("the UBS '547 account").

12.   The opening balance of the UBS '547 account was approximately 4 million Swiss francs. On information and belief, that amount was approximately equal to $2,520,000.

13.   On information and belief, the Wahdans told UBS that the source of their wealth was approximately 1/3 savings or family wealth, and 2/3 revenues from their Colorado businesses.

14.   On or about January 22, 2003, the Wahdans opened a second account at UBS. The account number ended with the digits 526 ("the UBS '526 account"). The UBS '526 account was funded with money transferred from the UBS '547 account.

15.   On or about September 19, 2005, the Wahdans opened another account at UBS. The account number ended with the digits 036 ("the UBS '036 account"). The UBS '036 account was funded with money transferred from the UBS '547 account and the UBS '526 account, and the latter two accounts were closed.

16.   With respect to each of the UBS accounts, the Wahdans instructed UBS not to send them any correspondence in the United States regarding the account, but instead to retain it in Switzerland.

17.   With respect to each of the UBS accounts, the Wahdans waived their right to invest in U.S. securities. By waiving that right, the Wahdans avoided the possibility that income in the accounts (and thus the accounts' existence) would be reported to U.S. taxing authorities.

18.   On more than twenty occasions between 2001 and 2005, the Wahdans sent checks to UBS in Switzerland to be deposited into the UBS '547 account. Often, the checks were cashier's checks made payable to the order of Urayb Wahdan.

19.   On information and belief, the Wahdans frequently structured their purchase of cashier's checks in order to avoid financial reporting requirements.

20.   On several occasions between 2001 and 2005, the Wahdans transferred funds from the UBS accounts to accounts at other foreign financial institutions.

**The Wahdans Close the UBS Accounts**

21.   On July 1, 2008, the U.S. District Court for the Southern District of Florida approved a "John Doe" summons to UBS to obtain information on U.S. clients of UBS.

22.   On or about July 17, 2008, UBS publicly announced that it would no longer provide cross-border services to clients located in the United States.

23.   On or about March 27, 2009, UBS sent a letter to the Wahdans informing them that it intended to terminate the Wahdans' banking relationship with UBS. The letter stated: "You must promptly instruct UBS to transfer the positions

currently held in your account (or to liquidate such positions and transfer any resulting proceeds) to a financial institution that you designate."

24.    The March 27, 2009 UBS letter suggested that the Wahdans transfer the funds to a UBS entity registered with the U.S. Securities and Exchange Commission, which would "requir[e] that you supply a properly executed U.S. Form W-9."

25.    The letter further "recommend[ed]" that the Wahdans consult with a U.S. advisor "to determine any . . . other disclosure obligations with respect to prior tax years or the closure of your account." The letter informed the Wahdans that the IRS "has a voluntary disclosure practice to encourage U.S. taxpayers to bring themselves voluntarily into full compliance with U.S. tax laws." Finally, the letter noted that the Department of Justice "has an ongoing investigation of United States taxpayers using offshore accounts to evade U.S. taxes," and that "UBS is continuing to cooperate with the ongoing investigation." The letter included a form that could be filled out and returned permitting UBS to disclose the Wahdans' identity to the IRS.

26.    The Wahdans did not enroll in the voluntary disclosure program.

27.    The Wahdans did not return the form permitting UBS to disclose their identities to the United States.

28.    On or about June 24, 2009, Said Wahdan instructed UBS to liquidate all the positions in the UBS '036 account.

29.   On or about June 24, 2009, Said Wahdan instructed UBS to issue three checks of 50,000 euros from the UBS '036 account, payable to himself. He told UBS, "I will come and pick them up."

30.   On or about June 26, 2009, at the Wahdans' instruction, UBS transferred 708,000 euros from the UBS '036 account to an account at Arab Bank (Switzerland), Ltd. The Arab Bank account number ended '038 ("the Arab Bank of Switzerland '038 account").

31.   On or about June 29, 2009, Said Wahdan instructed UBS to transfer all of the remaining funds in the UBS '036 account to the Arab Bank of Switzerland '038 account, then close the UBS '036 account.

32.   On or about July 1, 2009, UBS transferred 1,133,000 euros from the UBS '036 account to the Arab Bank of Switzerland '038 account. On information and belief, the transferred sum was equivalent to approximately $1,578,000.

33.   On or about July 30, 2009, UBS transferred 222,832 euros from the UBS '036 account to the Arab Bank of Switzerland '038 account. On information and belief, the transferred sum was equivalent to approximately $318,000.

## The Wahdans' Other Foreign Financial Accounts

34.   In 2009, in addition to the UBS '036 account described above, the Wahdans held a financial interest in each the following foreign financial accounts:

| Bank | Last 3 digits of account no. | Account Currency | Account Owner |
|---|---|---|---|
| Arab Bank of Switzerland | 038 | U.S. dollar | Urayb & Said Wahdan |
| | 038 | Euro | Urayb & Said Wahdan |
| Arab Bank of Jordan | 500 | Jordanian dinar | Urayb Wahdan |
| | 510 | U.S. dollar | Urayb Wahdan |
| | 536 | Euro | Urayb Wahdan |
| Jordan Islamic Bank | 835 | Jordanian dinar | Urayb & Said Wahdan |
| | 121 | Jordanian dinar | Urayb & Said Wahdan |

35.   On information and belief, although Said Wahdan was not named a joint owner of the accounts at Arab Bank of Jordan listed in the table accompanying paragraph 34, he in fact had a financial interest in those accounts.

36.   The aggregate balance of the accounts listed in the table accompanying paragraph 34 exceeded $10,000 during the year 2009.

37.   In 2010, the Wahdans maintained the following foreign financial accounts at the following institutions:

| Bank | Last 3 digits of account no. | Account Currency | Account Owner |
|---|---|---|---|
| Arab Bank of Switzerland | 038 | Euro | Urayb & Said Wahdan |
| Arab Bank of Palestine | 925 | Jordanian dinar | Said Wahdan (and others) |
| Arab Bank of Jordan | 500 | Jordanian dinar | Urayb Wahdan |
| | 510 | U.S. dollar | Urayb Wahdan |
| | 536 | Euro | Urayb Wahdan |
| Jordan Islamic Bank | 835 | Jordanian dinar | Urayb & Said Wahdan |
| | 121 | Jordanian dinar | Urayb & Said Wahdan |
| | 111 | Jordanian dinar | Urayb & Said Wahdan |

38.   On information and belief, although Said Wahdan was not named a joint owner of the accounts at Arab Bank of Jordan listed in the table accompanying paragraph 37, he in fact had a financial interest in those accounts.

39.   On information and belief, although Urayb Wahdan was not named a joint owner of the Arab Bank of Palestine '925 account listed in the table accompanying paragraph 37, she in fact had a financial interest in that account.

40.   The aggregate balance of the accounts listed in the table accompanying paragraph 37 exceeded $10,000 during the year 2010.

### The Income Tax Examination

41.   On Schedule B to their originally-filed federal income tax returns for 2008 and 2009, the Wahdans checked the "No" box in response to a question asking whether they had, during each calendar year, an interest in or signature authority over a financial account in a foreign country.

42.   The Wahdans did not report any income from the foreign accounts on their originally-filed federal income tax returns for 2008 and 2009.

43.   In approximately 2011, the IRS opened an income tax examination of the Wahdans.

44.   During the examination, the Wahdans' attorney told the IRS, incorrectly, that the Wahdans had never transferred money from the United States to an offshore account. On information and belief, the attorney's incorrect statement was based on a deliberately false representation by Said Wahdan.

45. During the examination, the Wahdans failed or refused to produce statements for their foreign accounts to the IRS upon the IRS's request.

**Count I: Recovery of FBAR Penalties Assessed Against Urayb Wahdan**

46. The United States incorporates the allegations in paragraphs 1 to 45, above.

47. On information and belief, before June 30, 2009, Urayb Wahdan knew that she was required to report ownership of her financial interest in a foreign financial account to the U.S. Treasury Department by filing an FBAR.

48. Urayb Wahdan has never filed an FBAR for 2008 or any earlier year.

49. Urayb Wahdan knowingly and intentionally failed to file an FBAR for 2008.

50. In the alternative to the preceding paragraph, Urayb Wahdan recklessly disregarded her statutory duty to file an FBAR for 2008.

51. On June 30, 2010, Urayb Wahdan timely filed an FBAR for 2009, but the FBAR was not complete and accurate.

52. In particular, Urayb Wahdan's FBAR for 2009 did not list all of the foreign accounts in which she held a financial interest and it did not accurately list the maximum balance of each account, stating only that the balances exceeded $10,000.

53. On information and belief, Urayb Wahdan knowingly and intentionally filed an FBAR for 2009 that was not complete and accurate.

54. In the alternative to the preceding paragraph, Urayb Wahdan recklessly disregarded her statutory duty to file a complete and accurate FBAR for 2009.

55.   On June 30, 2011, Urayb Wahdan timely filed an FBAR for 2010, but the FBAR was not complete and accurate.

56.   In particular, Urayb Wahdan's FBAR for 2010 did not list all of the foreign accounts in which she held a financial interest and it did not accurately list the maximum balance of each account, stating only that the balances exceeded $10,000.

57.   On information and belief, Urayb Wahdan knowingly and intentionally filed an FBAR for 2010 that was not complete and accurate.

58.   In the alternative to the preceding paragraph, Urayb Wahdan recklessly disregarded her statutory duty to file a complete and accurate FBAR for 2010.

59.   On or about June 12, 2015, pursuant to 31 U.S.C. § 5321(a)(5), a duly authorized delegate of the Secretary of the Treasury timely assessed the following penalties against Urayb Wahdan:

| Year | Bank Account | Penalty Amount | Penalty Total for Year |
|---|---|---|---|
| 2008 | UBS '036 | $1,108,645.41 | $1,108,645.41 |
| 2009 | Arab Bank of Switzerland '038 [USD] | $100,000.00 | $1,299,234.54 |
|  | Arab Bank of Switzerland '038 [EUR] | $100,000.00 |  |
|  | Arab Bank of Jordan '510 | $100,000.00 |  |
|  | Arab Bank of Jordan '500 | $100,000.00 |  |
|  | Arab Bank of Jordan '536 | $599,234.54 |  |
|  | Jordan Islamic Bank '835 | $100,000.00 |  |
|  | Jordan Islamic Bank '121 | $100,000.00 |  |

| Year | Bank Account | Penalty Amount | Penalty Total for Year |
|------|--------------|----------------|------------------------|
| 2010 | Arab Bank of Switzerland '038 [EUR] | $100,000.00 | $1,399,234.54 |
| | Arab Bank of Jordan '510 | $100,000.00 | |
| | Arab Bank of Jordan '500 | $100,000.00 | |
| | Arab Bank of Jordan '536 | $599,234.54 | |
| | Arab Bank of Palestine '925 | $100,000.00 | |
| | Jordan Islamic Bank '835 | $100,000.00 | |
| | Jordan Islamic Bank '121 | $100,000.00 | |
| | Jordan Islamic Bank '111 | $100,000.00 | |
| | Jordan Islamic Bank '144 | $100,000.00 | |

60. The United States is entitled to recover $3,807,114.49 in assessed but unpaid FBAR penalties from Urayb Wahdan.

61. In addition, pursuant to 31 U.S.C. § 3717(a)(1), the United States is entitled to recover prejudgment interest accrued on the unpaid penalty. The accrued interest was $59,766.47 as of January 5, 2017.

62. In addition, pursuant to 31 U.S.C. § 3717(e)(2), the United States is entitled to recover a penalty for Urayb Wahdan's failure to pay a lawful debt owed to the United States. The accrued penalty was $358,598.85 as of January 5, 2017.

63. The United States is entitled to a judgment against Urayb Wahdan of $4,225,479.32, as of January 5, 2017, together with penalty and interest accruing after that date.

## Count II: Recovery of FBAR Penalties Against Said Wahdan

64. The United States incorporates the allegations in paragraphs 1 to 45, above.

65.   On information and belief, before June 30, 2009, Said Wahdan knew that he was required to report ownership of his financial interest in a foreign financial account to the U.S. Treasury Department by filing an FBAR.

66.   Said Wahdan has never filed an FBAR for 2008 or any earlier year.

67.   Said Wahdan knowingly and intentionally failed to file an FBAR for 2008.

68.   In the alternative to the preceding paragraph, Said Wahdan recklessly disregarded his statutory duty to file an FBAR for 2008.

69.   On June 30, 2010, Said Wahdan timely filed an FBAR for 2009, but the FBAR was not complete and accurate.

70.   In particular, Said Wahdan's FBAR for 2009 did not list all of the foreign accounts in which he held a financial interest and it did not accurately list the maximum balance of each account, stating only that the balances exceeded $10,000.

71.   On information and belief, Said Wahdan knowingly and intentionally filed an FBAR for 2009 that was not complete and accurate.

72.   In the alternative to the preceding paragraph, Said Wahdan recklessly disregarded his statutory duty to file a true and complete FBAR for 2009.

73.   On June 30, 2011, Said Wahdan timely filed an FBAR for 2010, but the FBAR was not complete and accurate.

74.   In particular, Said Wahdan's FBAR for 2010 did not list all of the foreign accounts in which he held a financial interest and it did not accurately list the maximum balance of each account, stating only that the balances exceeded $10,000.

75.   On information and belief, Said Wahdan knowingly and intentionally filed an FBAR for 2010 that was not true and complete.

76.   In the alternative to the preceding paragraph, Said Wahdan recklessly disregarded his statutory duty to file a true and complete FBAR for 2010.

77.   On or about May 28, 2015, pursuant to 31 U.S.C. § 5321(a)(5), a duly authorized delegate of the Secretary of the Treasury timely assessed the following penalties against Said Wahdan:

| Year | Bank Account | Penalty Amount | Penalty Total for Year |
|------|--------------|----------------|------------------------|
| 2008 | UBS '036 | $1,108,645.41 | $1,108,645.41 |
| 2009 | Arab Bank of Switzerland '038 [USD] | $100,000.00 | $1,299,234.54 |
| | Arab Bank of Switzerland '038 [EUR] | $100,000.00 | |
| | Arab Bank of Jordan '510 | $100,000.00 | |
| | Arab Bank of Jordan '500 | $100,000.00 | |
| | Arab Bank of Jordan '536 | $599,234.54 | |
| | Jordan Islamic Bank '835 | $100,000.00 | |
| | Jordan Islamic Bank '121 | $100,000.00 | |
| 2010 | Arab Bank of Switzerland '038 [EUR] | $100,000.00 | $1,399,234.54 |
| | Arab Bank of Jordan '510 | $100,000.00 | |
| | Arab Bank of Jordan '500 | $100,000.00 | |
| | Arab Bank of Jordan '536 | $599,234.54 | |
| | Arab Bank of Palestine '925 | $100,000.00 | |
| | Jordan Islamic Bank '835 | $100,000.00 | |
| | Jordan Islamic Bank '121 | $100,000.00 | |
| | Jordan Islamic Bank '111 | $100,000.00 | |
| | Jordan Islamic Bank '144 | $100,000.00 | |

78.   The United States is entitled to recover $3,807,114.49 in assessed but unpaid FBAR penalties from Said Wahdan.

79.   In addition, pursuant to 31 U.S.C. § 3717(a)(1), the United States is entitled to recover prejudgment interest accrued on the unpaid penalty.  The accrued interest was $70,927.05 as of April 7, 2017.

80.   In addition, pursuant to 31 U.S.C. § 3717(e)(2), the United States is entitled to recover a penalty for Said Wahdan's failure to pay a lawful debt owed to the United States.  The accrued penalty was $426,562.34 as of April 7, 2017.

81.   The United States is entitled to a judgment against Said Wahdan of $4,303,603.39 as of April 7, 2017, together with penalty and interest accruing after that date.

**For the foregoing reasons**, the United States respectfully requests the following relief:

A.   A judgment against Urayb Wahdan and in favor of the United States in the amount of $4,225,479.32, as of January 5, 2017, together with penalty and interest accruing after that date;

B.   A judgment against Said Wahdan and in favor of the United States in the amount of $4,303,603.39 as of April 7, 2017, together with penalty and interest accruing after that date; and

\\

C.    Any other and further relief as the Court may find necessary or

appropriate.


Respectfully submitted this 26th day of May, 2017.


DAVID A. HUBBERT
Acting Assistant Attorney General

 /s/ Adam Strait
ADAM D. STRAIT
Mass. BBO No. 670484
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C. 20044
Telephone:   (202) 307-2135
Facsimile:    (202) 307-0054
adam.d.strait@usdoj.gov

*Of Counsel:*
ROBERT C. TROYER
Acting U.S. Attorney, District of Colorado

*Attorneys for the United States of America*