IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 17-CV-1287-MSK

**UNITED STATES OF AMERICA,**

    Plaintiffs,

*v.*

**URAYB WADHAN, and
SAID WADHAN,**

    Defendants.

---

**OPINION AND ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS**

---

**THIS MATTER** comes before the Court on the Defendants' Motion for Judgment on the Pleadings (**# 33**), the Plaintiff's response (**# 34**), the Defendants' reply (**# 35**), and the Plaintiff's surreply (**# 44**).

## I.    JURISDICTION

The Internal Revenue Service (IRS) seeks a judgment for civil penalties assessed against Defendants Urayb Wadhan and Said Wadhan (the Wadhans), who had interests in multiple overseas bank accounts, each with a balance greater than $10,000. The Wadhans contend that the IRS lacked the authority to impose any penalty in excess of $100,000. To resolve this dispute, the Court exercises jurisdiction pursuant to 28 U.S.C. § 1331.

## II.    BACKGROUND[1]

According to the Complaint, the Wadhans failed to file or filed inaccurate Forms TD F

---

[1] The Court recounts and accepts as true the well-pled facts alleged in Complaint (**# 1**). *See Dudnikov v. Chalk & Vermilion Fine Arts Inc.*, 514 F.3d 1063, 1069–70 (10th Cir. 2008).

90.22-1, Report of Foreign Bank and Financial Accounts (FBAR) for 2008, 2009, and 2010. As a consequence, the IRS assessed numerous penalties for multiple FBAR violations, many of which were flat amounts of $100,000. But for three violations, the IRS assessed penalties of $1,108,645.41 for 2008, $599,234.54 for 2009, and $599,234.54 for 2010.

The Defendants move for judgment on the pleadings (**# 33**) contending that the penalties for years 2008, 2009 and 2010 must be capped at $100,000.

### III. LEGAL STANDARD

Typically, an "agency's action is entitled to a presumption of validity, and the burden is upon the petitioner to establish the action is arbitrary or capricious." *Sorenson Commc'ns Inc. v. FCC*, 567 F.3d 1215, 1221 (10th Cir. 2009). Once agency action is challenged, a district court reviews the action as if it were an appellate court, applying the Administrative Procedure Act. *See Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994). The Court can set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

The factual record in conjunction with a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is the same as that under Rule 12(b). *See Ramirez v. Dep't of Corr.*, 222 F.3d 1238, 1240 (10th Cir. 2000). The Court accepts all well-pleaded allegations in a complaint as true and views those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1149 (10th Cir. 2001) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). The Court also limits its consideration to the four corners of a complaint, any exhibits attached thereto, and any external documents referred to in the complaint if such document is central to the claim and the parties don't dispute the authenticity of the document.

*See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). *Alvarado v. KOB-TV LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007).

Ordinarily, a Rule 12(c) motion is directed to the claims asserted in the Complaint such that "judgment on the case can be achieved by focusing on the content of the pleadings." *SKS Investments Ltd. v. Gilman Metals Co.*, No. 12-CV-0806, 2013 WL 249099 at *1 (D. Colo. Jan. 23, 2013). In the Complaint, the IRS asserts only two claims — one against each Defendant for penalties pursuant to 31 U.S.C.§5321(a)(5) for willful failure to file accurate forms for numerous off-shore bank accounts (Report of Foreign Bank and Financial Accounts) for 2008, 2009 and 2010. In contrast, the issue presented in the subject motion only concerns penalties imposed on certain accounts, but as to both Defendants.

Because the issue raised in the extant motion is much narrower, and not configured to match the claims asserted, the Court inquired of counsel how a ruling might be fashioned. Based on their representations at a hearing conducted on July 17, 2018, the Court understands that the parties have submitted all evidence that would bear on this issue in conjunction with this motion. The Court therefore converts the motion to one brought pursuant to Rule 56(a), and finds that there is no genuine issue of material fact. Accordingly, the issue raised can be determined as a matter of law. Fed. R. Civ. P. 56(a).

## IV. DISCUSSION

The focus of the dispute is upon the interplay between statutory and regulatory law. The applicable statute with regard to offshore accounts is 31 U.S.C. § 5321(a)(5). It authorizes the Secretary of the Treasury to impose civil penalties for violations of FBAR requirements, and for willful violations sets the maximum penalty at the greater of $100,000 or 50 percent of the

balance in the relevant account.[2]

Several regulations implement the statute. They are all found in Title 31 of the Code of Federal Regulations governing Money and Finance for the Department of Treasury. The first is 31 C.F.R. § 1010.820(g), which provides that "[f]or any willful violation [of the FBAR implementing regulations] involving a failure to report the existence of an account or any identifying information required to be provided with respect to such account," the Secretary "*may* assess" a civil penalty of $ 25,000 or up to the balance in the account but no greater than $100,000. The second regulation is 31 C.F.R. § 1010.810(g) in which the Secretary delegates his/her authority to "assess and collect civil penalties under 31 U.S.C. § 5321 and 31 C.F.R. § 1010.820" to the Commissioner of Internal Revenue by means of a memorandum of Agreement between FinCen and the IRS.

Under this scheme, the *statute* (31 U.S.C. § 5321(a)(5)(C)) permits the Secretary to impose a penalty of up to 50 percent of the account balance, but under 31 C.F.R.§ 1010.820(g) the Secretary has limited the penalty to be enforced to $100,000. The parties agree that the disjunction between the statute and the regulation occurred in 2004 when the statutory penalty cap was increased,[3] but no corresponding change was made in 31 C.F.R. § 1010.820(g). Believing the statutory amendment superseded § 1010.820, the IRS enforced FBAR violations under the limits set forth in the current § 5321(a)(5)(C) against the Wadhans.

The Defendants argue that the assessments were improper because the IRS only had that authority limited by 31 C.F.R. § 1010.820(g). The IRS argues that it was obligated to impose

---

[2] § 5321 (a)(5)(C) provides that, in the "case of any person willfully violating, or willfully causing any violation of, any provision of section 5314 (i) the maximum penalty under subparagraph (B)(i) shall be increased to the greater of – (I) $100,000, or (II) 50 percent of the amount determined under subparagraph (D)."
[3] American Jobs Creation Act of 2004, Pub. L. No. 108-357 § 821, 118 Stat. 1418 (2004).

the penalties in the statute, that the reference to "may" in the statute does not reflect any discretion to impose penalties smaller than the full amount authorized by Congress, and that the 2004 amendment to the statute supersedes any inconsistency in by 31 C.F.R. § 1010.820(g).

The Court finds the Defendants' arguments more persuasive. Beginning with the text of 31 U.S.C. § 5321, the Court notes that both the pre-2004 version and the current version specifically grant the Secretary discretion to assess penalties. Both versions state that the Secretary "may assess" the described penalties. The statutory language is clear, and there is nothing in the legislative history offered by the IRS that suggests that Congress intended to limit the discretion of the Secretary to determine what penalties should be imposed. Congress' intent and directive ends with the statute.

For a statute to supersede a regulation, it has to be clearly inconsistent with the regulation. The IRS argues that the different penalty caps in 31 U.S.C. § 5321 and 31 C.F.R. § 1010.820(g) demonstrates an inconsistency such that the statute trumps the regulation. *United States v. Larionoff*, 431 U.S. 864, 873 (1977). The Court is unpersuaded for several reasons.

First, the statute and the regulation are not inconsistent on their face. The statute sets a higher cap than does the regulation; instead, the penalty cap in the regulation is, in essence, a subset of the penalties that could be imposed under the statute. The statute does not mandate imposition of the maximum penalty, but instead gives the Secretary discretion to impose penalties below the statutory cap. This means that compliance with the lower cap set in 31 C.F.R. § 1010.820(g) also complies with 31 U.S.C. § 5321.

Second, there is a simple and straightforward interpretation that gives coherent meaning to both the statute and the regulation — in the exercise of statutory discretion, the Secretary

5

limited the penalties that the IRS could impose to $100,000 (plus the amount adjusted for inflation).

Third, although the penalty caps in the statute and regulation differ, one cannot assume that the Secretary simply overlooked the difference between them. The difference has existed since 2004 — essentially 14 years. During that time, the Secretary made regular adjustments to another regulation, 31 C.F.R. § 1010.821, that adjusted penalties to account for inflation. Among the penalties affected by this regulation is that created by 31 U.S.C. § 5321(a)(5)(C), for which the inflationary increases have been made at least five times in the last eight years[4], but at no time was the listed penalty cap raised above $100,000. *See* Civil Monetary Penalty Adjustment and Table, 81 Fed. Reg. 42,503, 42,504–05 (June 30, 2016). The periodic revisions of the inflationary calculation required focus on the penalty cap, but it was never changed to comport with 31 U.S.C. § 5321(a)(5)(C). This suggests that the Secretary was aware of the penalties available under 31 U.S.C. § 5321(a)(5)(C) and elected to continue to limit the IRS' authority to impose penalties to $100,000 as specified in 31 C.F.R. § 1010.820.

Finally, the IRS' reliance upon legislative history is misplaced. The IRS argues that congressional intent as evident from the legislative history for the 2004 amendment to 31 U.S.C. § 5321(a)(5)(C) shows that Congress intended the statute to supersede 31 C.F.R. § 1010.820. The Court pauses to note that, ordinarily, it does not resort to legislative history unless the text of a statute is ambiguous. *Mohamad v. Palestinian Auth.*, 566 U.S. 449, 458 (2012). There is no apparent ambiguity in 31 U.S.C. § 5321(a)(5)(C) — it simply changed that maximum penalty that could be imposed.

But assuming that such legislative history is relevant, it does not support the IRS'

---

[4] Amendments have been made in 2010, 2015, 2016, 2017, and 2018.

argument. The Senate Report discusses threats arising from offshore accounts in the context of adding civil penalties for *nonwillful* violations but there is no discussion about willful violations. *See* S. Rep. No. 108-192 at 108 (2003). Willful violations are mentioned only in the Conference Report, which states only that the increase in penalties is based on a Senate amendment and that the committee accepted the amendment. *See* H.R. Rep. No. 108-755 at 615 (2004) (Conf. Rep.). Although Congress[5] favored higher penalties for FBAR noncompliance, there is nothing here that suggests that Congress believed that the maximum penalties for willful violations should be mandatorily imposed.

The IRS also argues the Secretary has never intended 31 C.F.R. § 1010.820 to limit the IRS in its ability to impose the maximum penalties authorized. The IRS points to the preamble to 31 C.F.R. § 1010.820 when its predecessor provision (§ 103.57) was issued in 1987. It reads: "Treasury has been given the authority and responsibility to enforce the Bank Secrecy Act, and intends to do so to the fullest extent possible. There will be no 'safe harbor' of allowable violations." Amendments to Implementing Regulations Under the Bank Secrecy Act, 52 Fed. Reg. 11,436, 11,440 (Apr. 8, 1987). The IRS contends that this language suggests that the Secretary anticipated that the regulations would keep pace with statutory provisions.

The IRS reads more into this provision than does the Court. It is true that this preamble evidences an intent to prosecute all violations, but it does not expressly address the scope of penalties to be imposed, nor can it be fairly understood as directing how regulations would be updated. For example, if the Secretary intended that 31 C.F.R. § 1010.820 would automatically

---

[5] The IRS also cites a report from the Joint Committee on Taxation. The report is unhelpful because it was published well after § 5321 was amended and it states that increasing the penalties for willful violations *and* creating the new civil penalties for nonwillful violations would improve the reporting of foreign financial accounts. *See* Joint Committee on Taxation, General Explanation of Tax Legislation Enacted in the 108th Congress, JCS-5-05 at 378 (2005).

7

incorporate changes in 31 U.S.C. § 5321, the regulation could have referred to the statute, but in the past 31 years, it has not done so.

In the absence of such clear direction, the Court is left with the question of what is meant by enforcement to the "fullest extent possible". This phrase could have a variety of meanings — prosecuting every violator and imposing maximum sanctions are just two. But the next statement in the preamble indicates the most likely meaning has to do with scope of prosecution — that there be no "safe harbors".

The Court's reasoning is congruous with the Western District of Texas' determination on the same issue in *United States v. Colliot*, No. 16-CA-1281-SS, 2018 WL 2271381 (May 16, 2018). Although the IRS believes that it is empowered by 31 U.S.C. § 5321 to act, it is not. It is empowered by the Secretary who has discretion to determine what penalties are imposed. § 1010.820 remains in effect until amended or repealed. *See Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199, 1206 (2015) ("[A]gencies [must] use the same procedures when they amend or repeal a rule as they used to issue the rule in the first instance."). As a result, the IRS lacks authority to impose a penalty in excess of $100,000 as prescribed by 31 C.F.R.§ 1010.820.

## V. CONCLUSION

For the foregoing reasons, the Defendants' Motion, as reconfigured, (**# 33**) is **GRANTED**. The IRS is not empowered to impose yearly penalties in excess of $100,000.00 per account, and therefore claimed penalties, if proven, will be limited to such sum.

Dated this 18th day of July, 2018.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge